**DASHAWNA HOLLINGER,** *et al.*,

        **Plaintiffs,**

**-vs-**                                **Case No. 6:11-cv-59-Orl-19TBS**

**HARTFORD FIRE INSURANCE GROUP,**

        **Defendant.**

_____

# ORDER

This case comes before the Court on the following:

(1)    The Motion for Final Summary Judgment and Incorporated Memorandum of Law filed by Defendant Hartford Fire Insurance Group (Doc. No. 46, filed Aug. 13, 2012);

(2)    The Joint Response in Opposition to Defendants' Motion for Final Summary Judgment filed by Plaintiffs Dashawna Hollinger, Blanche Paylor, and Arlene Rosario (Doc. No. 49, filed Sept. 17, 2012); and

(3)    The Reply in Support of Defendant's Motion for Final Summary Judgment filed by Defendant Hartford Fire Insurance Group (Doc. No. 53, filed Sept. 27, 2012).

## INTRODUCTION AND PROCEDURAL BACKGROUND

This action concerns allegations of Plaintiffs Dashawna Hollinger ("Hollinger"), Blanche Paylor ("Paylor"), and Arlene Rosario ("Rosario") (collectively, "Plaintiffs") that their former employer, Hartford Fire Insurance Group ("Hartford"), is liable for violations of the Fair Labor Standards Act, 29 U.S.C. §§201, *et seq.* (the "FLSA") and the Family Medical Leave Act, 29 U.S.C.

§§2601, *et seq*. (the "FMLA"). (Doc. No. 31 (the "Amended Complaint"); Doc. No. 55 at 2.)

Specifically, in their Amended Complaint, Plaintiffs assert the following claims against Hartford:

(1)    A claim for an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. § 216(b), for willfully misclassifying Plaintiffs' position as exempt and failing to pay overtime worked by Plaintiffs and other proposed class members ("Count I") (Doc. No. 31 ¶¶23-29);

(2)    A claim for interference with Plaintiffs' respective rights under the FMLA ("Count II") (Doc. No. 31 ¶¶30-35); and

(3)    A claim for retaliation against Plaintiffs due to their exercise or attempt to exercise rights under the FMLA ("Count III") (Doc. No. 31 ¶¶36-41).

Plaintiffs seek general and compensatory damages, liquidated damages, prejudgment interest, and their costs and reasonable attorney's fees. (Doc. No. 31 at 10.)

Hartford filed its Answer to the Amended Complaint on October 13, 2011, in which it denied all wrongdoing, and it asserted nineteen affirmative defenses, including that: (1) all Plaintiffs were exempt from the overtime requirements of the FLSA pursuant to 29 U.S.C. §213 and applicable regulations (the "Exemption Defense"); (2) Paylor's FMLA claims are barred "pursuant to a lawfully binding separation agreement and release executed by" Paylor (the "Waiver Defense"); (3) Hartford granted Plaintiffs every FMLA right requested by Plaintiffs during their employment with Hartford; and (4) when Hartford terminated the employment of Hollinger and Rosario, it did so for legitimate, non-retaliatory reasons. (Doc. No. 32 at 9-10.) Further, Hartford conceded, and the Court agrees, that the Court may exercise personal jurisdiction over the parties, the Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1331, and venue in this Court is proper pursuant to 28 U.S.C. §1391(b) and Rule 1.02(c) of the Local Rules of the Middle District of Florida. (Doc. No. 32 ¶¶ 1-2, 6 (admitting that jurisdiction and venue are proper); Doc. No. 55 at 1.)

After obtaining leave to exceed the page limits for dispositive motions under the Local Rules (Doc. Nos. 41, 42), Hartford filed its fifty-page Motion for Final Summary Judgment and Incorporated Memorandum of Law (the "Motion"). (Doc. No. 46.) Plaintiffs filed their joint Response in Opposition to the Motion on September 17, 2012 (the "Response"). (Doc. No. 49.) Hartford then filed its Reply in Support of its Motion on September 27, 2012 (the "Reply"). (Doc. No. 53.) Upon careful consideration of the record, the applicable law, and the parties' respective arguments, the Court will grant the Motion in part and deny the Motion in part. Specifically, the Court will grant the Motion based on Hartford's Waiver Defense and will dismiss Paylor's FMLA claims. The Court also will grant the Motion as to Hollinger's FMLA Claims. The Court will deny the Motion in all other respects.

## THE LEGAL STANDARDS

### I.    Rule 56 of the Federal Rules of Civil Procedure

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp.*, 357 F.3d at 1259. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable factfinder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.*

## II.     The FLSA

The FLSA establishes minimum standards in order to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. §202(a). Under the FLSA, subject employers must pay their employees one and one-half times the employee's usual hourly wage for all hours worked in excess of forty hours per week (the "Overtime Compensation Requirement"). 29 U.S.C. §207(a)(1). The Overtime Exemption Requirement does not apply to "any employee employed in a bona fide" administrative position (the "Administrative Exemption"), 29 U.S.C. §213(a)(1); however, the employer bears the burden to prove by "clear and affirmative evidence" that the Administrative Exemption applies. *Birdwell v. City of Gadsden*, 970 F.2d 802, 805 (11th Cir. 1992); *e.g.*, *Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir. 2004)(citing *Atlanta Prof'l Firefighters Union v. City of Atlanta*, 920 F.2d 800, 804 (11th Cir. 1991)). Further, the Administrative Exemption is

narrowly construed against the employer.  *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001); *e.g.*, *Hogan*, 361 F.3d at 625.

## III.    The FMLA

The FMLA was enacted to "balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity . . . . in a manner that accommodates the legitimate interests of employers." 29 U.S.C. §2601(b).  Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:" (1) due to "a serious health condition that makes the employee unable to perform the functions of the position of such employee" or (2) "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. §2612(a)(1).[1]  Employees who take leave to which they are entitled under the FMLA must be reinstated to the position they held before taking FMLA leave.  29 U.S.C. §2614(a).  In addition, the FMLA prohibits employers from retaliating against employees who exercise or attempt to exercise their FMLA-created rights.  29 U.S.C. §2615(a).  Violations of the FMLA subject an employer to liability for damages and equitable relief.  29 U.S.C. §2617(a)(1)(A) & (B).

### A.    Interference Claims

To establish an interference claim, employees must demonstrate by a preponderance of the evidence that their employer denied them a benefit to which they were entitled under the FMLA.

---

[1] On March 20, 2012, the Supreme Court of the United States held that 29 U.S.C. §2612(a)(1)(D) is unconstitutional as applied to the States.  *Coleman v. Court of Appeals of Maryland*, 132 S.Ct. 1327, 1332 (2012).  The *Coleman* Court does not impact FMLA claims asserted against private parties like Hartford.

*Pereda v. Brookdale Senior Living Cmtys, Inc.*, 666 F.3d 1269, 1274 (11th Cir. 2012). "The employee 'does not have to allege that his employer intended to deny the right; the employer's motives are irrelevant.'" *Leach v. State Farm Mut. Auto. Ins. Co.*, 431 Fed. App'x. 771, 776 (11th Cir. 2011) (quoting *Strickland v. Water Works & Sewer Bd.,* 239 F.3d 1199, 1208 (11th Cir. 2001)). Where the right allegedly denied is the right to reinstatement; however, the employer may avoid liability by demonstrating that "it would have discharged the employee even had she not been on FMLA leave." *Id.* If denial or reinstatement was for a reason "wholly unrelated to FMLA leave," then the employer is not liable. *Strickland,* 239 F.3d at 1208.

### B. Retaliation Claims

Absent direct evidence of an employer's intent to retaliate, FMLA retaliation claims are analyzed in accordance with the burden-shifting framework set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1314 (11th Cir. 2001); *Strickland*, 239 F.3d at 1207. A *prima facie* case requires evidence that: (1) the employee engaged in statutorily protected conduct, (2) the employee suffered an adverse action, and (3) there is a causal connection between the protected conduct and an adverse action by the employer. *Id.* If an employee makes out a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate reason for the adverse employment action. *Smith*, 273 F.3d at 1314 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). The presumption raised by the *prima facie* case is rebutted if the employer satisfies its burden of production, and the employee is left with the burden of persuasion to demonstrate that the employer's proffered reason for an adverse employment action was pretextual. *Hairston*, 9 F.3d at 919.

# The Factual Record

## I.    The Record Evidence

The record before the Court is voluminous.  Plaintiffs and Hartford have submitted hundreds

of pages of deposition testimony, witness affidavits, correspondence, various business records, and

discovery responses.  Specifically, Hartford submitted the complete deposition transcripts (including

deposition exhibits) for:

> (1)    Paylor (Doc. Nos. 46-9–46-16), and her direct supervisors, Kelly Smith ("Smith")
> and Nicole Hancock ("Hancock") (Doc. Nos. 46-28 – 46-30 (providing Smith's
> deposition transcript and exhibits); (Doc. No. 46-31 (providing Hancock's deposition
> transcript));
>
> (2)    Hollinger (Doc. Nos. 46-17–46-26), and her direct supervisor, Eileen Glass ("Glass")
> (Doc. No. 46-27);
>
> (3)    Rosario (Doc. Nos. 46-2–46-8), and her direct supervisor, Warren Ford ("Ford")
> (Doc. No. 64-34); and
>
> (4)    Rutledge Crump ("Crump"), who was the Long-Term Disability Director and the
> supervisor of Smith, Hancock, Glass and Ford during the time period pertinent to this
> litigation (Doc. Nos. 46-32–46-33).

Hartford also submitted the Affidavit of its Employee Relations Director, Amy Dorris ("Dorris")

(Doc. No. 46-36), and Paylor's Interrogatory Responses (Doc. No. 46-35).  Finally, Hartford

submitted a copy of Opinion Letter FLSA 2002-11, dated November 19, 2002 (the "Opinion

Letter"), which was issued by Administrator Tammy D. McCutchen of the United States Department

of Labor (the "DOL"), Employment Standards Administration, Wage and Hour Division (the "DOL

Division") (Doc. No. 46-37).

Plaintiffs submitted a Notice of their intent to rely on the depositions and documents filed

by Hartford.  (Doc. No. 49, filed Sept. 17, 2012.)  Plaintiffs also submitted the following non-

duplicative documents in support of their Response:

    (1)     correspondence from Hartford's FMLA administrator ("Hartleave") to Paylor (Doc. No. 57-7 (providing correspondence dated September 23, 2009 (the "September Hartleave Letter");[2]

    (2)     the affidavit of Hollinger (Doc. No. 51-13), and correspondence from Hartleave to Hollinger (Doc. No. 51-14 (providing correspondence dated November 5, 2009 (the "November Hartleave Letter"));

    (3)     correspondence from Hartleave to Rosario (Doc. No. 57-9 (providing correspondence dated February 23, 2009 (the "February Hartleave Letter")); Doc. No. 57-8 (providing correspondence dated March 12, 2009 (the "March Hartleave Letter")); Doc. No. 57-11 (providing correspondence dated August 19, 2009 (the "August Hartleave Letter"));

    (4)     a copy of Hartford's Progressive Discipline Policy (Doc. No. 51-12 (the "Progressive Policy")); and

    (5)     an unpublished decision issued by the United States District Court for the Southern District of Florida, *Colyer v. SSC Disability Servs., LLC*, No. 11-cv-20984, 2012 WL 882500 (S.D. Fla. Mar. 14, 2012) (Doc. No. 51-1).

Plaintiffs also submitted a number of documents that were previously submitted by Hartford. (Doc. No. 51-2 (providing a copy of the Opinion); Doc. No. 51-3 (providing a copy of Paylor's Separation Agreement and General Release (the "Settlement"); Doc. No. 51-4 (providing an electronic message dated September 4, 2009 from HartLeave@Hartfordlife.com to Blanche.Paylor@hartfordlife.com); Doc. No. 51-6 (providing a Performance Improvement Report dated September 11, 2009 for Paylor); Doc. No. 51-10 (providing Rosario's First and Final Warning dated March 11, 2009 (the "FFW")).)

    The facts are largely disputed; nonetheless, the Court will endeavor to summarize the few facts that are undisputed. (*Infra* THE FACTUAL RECORD, Part II.) In its analysis of Plaintiffs' claims

---

[2] "Hartleave is a third party vendor that handles all requests for leave made by" Hartford's employees, "including requests for leave under the [FMLA]. Hartleave personnel are not employed by . . . Hartford." (Doc. No. 46-36 ¶4.)

and Hartford's defenses, the Court views all disputed evidence in the light most favorable to Plaintiffs.  (*Infra* ANALYSIS.)

## II.    The Undisputed Facts

Hartford provides insurance and investment products to consumers, including long term disability insurance.  (Doc. No. 46-36 ¶3.)  Hartford is an employer subject to the provisions of the FLSA and the FMLA.  At the times pertinent to this litigation, Hartford employed each Plaintiff in the position of Long Term Disability Analyst III ("LTD III Analyst").  LTD III Analysts were generally responsible for processing claims to long term disability that were submitted to Hartford. As explained *infra*, the daily activities involved in processing such claims are hotly disputed by the parties.  (*Infra* ANALYSIS, Part I.A.)  At a minimum, the parties agree that an LTD III Analyst does non-manual "office" work, has a somewhat flexible schedule, but must be present in the Hartford offices at least forty hours a week, and may also work from home through a remote office device called a "FOB."  LTD III Analysts are organized into teams, led by a team leader who, in turn, reports to a Long-Term Disability Director.  There is no dispute that Hartford classified the LTD III Analyst position as subject to the Administrative Exemption under the FLSA.  Accordingly, Hartford did not pay Plaintiffs for hours worked in excess of forty hours per week.  Instead, Hartford paid the Plaintiffs salaries in excess of $455 a week for all hours worked.

Plaintiffs worked sufficient hours to be eligible for FMLA leave in 2008 and 2009, and all Plaintiffs requested and were granted FMLA leave by Hartford through Hartleave, which was a company engaged by Hartford to handle its employees' requests for leave under the FMLA.  (Doc. No. 31 ¶¶6-8, 16, 24; Doc. No. 32 ¶¶6-7; Doc. No. 55.)  In March of 2009, after Rosario had taken approximately 390 hours of leave under the FMLA, Hartford terminated Rosario's employment.

(Doc. No. 55 at 5-6.) Hartford's stated reason for Rosario's termination was her admitted failure to return missed claimant telephone calls in accordance with Hartford's deadlines for returning such calls (the "Sundown Violations"). By November of 2009, Hollinger also had taken approximately 400 hours of leave under the FMLA. Like Rosario, Hollinger requested an additional period of leave, and Hartford then terminated Hollinger's employment. Hartford's stated reason for its termination was Hollinger's admitted deletion of entries in online "diaries" that were used to schedule and keep track of certain required tasks in processing long-term disability claims (the "Diary Deletions"). (Doc. No. 55 at 5-6.)

Like Rosario and Hollinger, Paylor experienced adverse employment action soon after she had taken approximately 390 hours of leave under the FMLA. Specifically, by September of 2009, Paylor had taken 390 hours of "intermittent" FMLA leave. In late August or early September of 2009, Hartford warned Paylor concerning certain performance deficiencies. While Paylor did not deny certain errors in her work, she requested and was granted additional leave under the FMLA. Hartford then presented Paylor with the option to agree to a performance improvement plan (the "PIP"), or accept a one-time offer of severance benefits in accordance with the terms of the Settlement, in which Paylor waived any claims she might have under the FMLA. On September 17, 2009, Paylor executed the Settlement and resigned her employment effective September 23, 2009. (Doc. No. 55 at 5-6; Doc. No. 51-3.)

## ANALYSIS

### I.     The Fair Labor Standards Act Claims

In Count I of their Amended Complaint, Plaintiffs allege a claim for an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. §216(b) for violation of FLSA's Overtime

Compensation Requirements. (Doc. No. 31 ¶¶23-29.) According to Plaintiffs, Hartford systematically violated the FLSA by: (1) misclassifying as exempt persons employed as LTD III Analysts as well as those employees in positions that are comparable to the LTD III Analyst position;[3] (2) failing to compensate such employees for hours worked in excess of forty hours per week; and (3) failing to maintain accurate records of the time such employees worked. (Doc. No. 31 ¶¶9-11, 13, 26-27.) Paylor, Rosario, and Hollinger each claim to have worked in excess of ten to thirty hours of overtime each week they were employed by Hartford as LTD III Analysts, and the Court accepts these claims as true for purposes of the Motion.

### A. Hartford's Exemption Defense

Even assuming that the Plaintiffs worked in excess of forty hours a week, Hartford argues it cannot be held liable for violating the Overtime Compensation Requirement because Hartford properly applied the Administrative Exemption to the LTD III Analyst position and to Plaintiffs in particular. (Doc. No. 46 at 23-33.) Based on this Exemption Defense, Hartford seeks entry of summary judgment on Count I of the Amended Complaint. (*Id.*) Success on this portion of its Motion, requires undisputed proof by "clear and affirmative evidence," that Hartford properly classified the Plaintiffs under the narrowly-construed Administrative Exemption. *Hogan*, 361 F.3d at 625; *Klinedinst*, 260 F.3d at 1254; *Birdwell*, 970 F.2d at 805. More specifically, the issue before the Court is whether Hartford has established that no reasonable jury would render a verdict against

---

[3] Plaintiffs allege that the following positions are comparable to an LTD Analyst III for purposes of Count I: (1) Short Term Disability Analyst I, (2) Short Term Disability Analyst II, (3) Short Term Disability Analyst III, (3) Long Term Disability Analyst I, (4) Long Term Disability Analyst II, (5) Claims Examiner I, (6) Claims Examiner II, and (7) Claims Examiner III. (Doc. No. 31 ¶ 14.) In their summary judgment briefing, the parties have not addressed any of these allegedly comparable positions.

Hartford concerning its Exemption Defense.

The FLSA does not specifically define the Administrative Exemption; rather the FLSA gives the Secretary of Labor "broad authority" to define and limit the scope of the Administrative Exemption in promulgated regulations. *Auer v. Robbins*, 519 U.S. 452, 456 (1997). The regulations defining the Administrative Exemption are set out in 29 C.F.R. §541.200, *et seq*. Under these regulations, the Administrative Exemption applies only where the employee:

(1)    is compensated on a salary basis of not less than $455 per week (the "Salary Requirement");

(2)    primarily performs office or non-manual work directly related to the management or general business operations of the employer or employer's customers (the "Primary Duty Requirement"); and

(3)    exercises discretion and independent judgment with respect to matters of significance (the "Independent Judgment Requirement").

29 C.F.R. § 541.200(a); *Avery v. City of Talladega*, 24 F.3d 1337, 1340 (11th Cir. 1994). There is no dispute that the Salary Requirement is satisfied with respect to each Plaintiff. (*Supra* THE FACTUAL RECORD, Part II.) Thus, only the Primary Duty Requirement and the Independent Judgment Requirement are at issue in the Motion.

According to the pertinent regulations, "an employee must perform work directly related to assisting with the running or servicing of the business" to meet the Primary Duty Requirement. 29 C.F.R. §541.201(a). The exercise of discretion and independent judgment as required by the Independent Judgment Requirement involves the employee's "comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered," together with "authority" to make a choice free from immediate or direct supervision with regard to "matters of significance." 29 C.F.R. §541.202(a). "[M]atters of significance" refers

to the "level of importance or consequence of the work performed" (*id.*), and a "[p]rimary duty" is defined as the "principal, main, major or most important duty that the employee performs," and "must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."[4]  29 C.F.R. §541.700.

In support of its Exemption Defense, Hartford relies on law applying the Primary Duty and Independent Judgment Requirements to employees in the insurance industry.  (Doc. No. 46 at 25-28.)  In particular, Hartford points to analysis of "insurance claims adjusters" (the "Adjusters"), which is provided in the Opinion Letter and in Regulation §541.203.  Specifically, Regulation §541.203 provides:

> [I]nsurance claims adjusters generally meet the [Primary Duty Requirement] for the [A]dministrative [E]xemption . . . if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates;  evaluating and making recommendations regarding coverage of claims;  determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation.

29 C.F.R. §541.203.  The DOL Division issued the Opinion Letter after enactment of Regulation §541.203, and it responded to a request "for an opinion regarding the exempt status of certain" Adjusters under the FLSA.  (Doc. No. 46-37 at 1.)  In the Opinion Letter, the DOL Division determined that the Adjusters described in the request qualified for the Administrative Exemption. This decision was based on a number of factors pertinent to the Primary Duty Requirement and the Independent Judgment Requirement.

With respect to the Primary Duty Requirement, the DOL Division noted that the Adjusters'

---

[4]  Satisfaction of the Primary Duty Requirement turns on the day-to-day activities of the employee, rather than job descriptions, resumes, or performance evaluations.  *Jarvis v. Griffin*, No. 6:08-cv-138-Orl-19KRS, 2009 WL 3064788, at *7 (M.D. Fla. Sept. 21, 2009).

job duties included: (1) gathering facts related to a claim "by interviewing the insureds, witnesses, and physicians," and (2) visiting the scene of an insurable event, inspecting property damage, and taking and reviewing photographs. (Doc. No. 46-37 at 1.) The Adjusters then weighed the factual information collected and prepared damage estimates based on "time lost from work, damages to personal property, the nature and extent of bodily injury, medical bills, and pain and suffering." (*Id.*) The Opinion Letter further noted that:

> Your description of the [Adjusters'] duties indicates that they perform many duties related to servicing the business. They are responsible for planning the processing of a claim from the beginning to the end, whether it is easily and quickly resolved or whether it proceeds to litigation. They represent the company and advise the management throughout the process of gathering the evidence, assessing credibility, reviewing the insurance policy, determining whether there is coverage, evaluating liability, making a decision on whether and how much to pay on the claim, establishing a reserve for the case, making a recommendation on claims above their established authority, and collaborating with the company's counsel if the case results in litigation. They also negotiate on behalf of the company with the claimant, whether the claimant is a policyholder or a third party claimant.

(*Id.* at 1-2.) The Opinion Letter concluded that such duties are "administrative in nature" because they "involve servicing the insurance company in the same manner that claim adjusters traditionally have done" as reflected in Regulation §541.203. (*Id.* (stating that the DOL "has long recognized that claims adjusters typically perform work that is administrative in nature").)

With respect to the Independent Judgment Requirement, the Opinion Letter advised that "a close review of the facts" is required, because the Independent Judgment Requirement "is the criterion that is most likely to cause claims adjusters to *fail to qualify for exemption*." (Doc. No. 46-37 at 3 (emphasis added).) The Opinion Letter contrasted the independent analysis and authority required under the Regulations with the mere "use of skill in applying well-established techniques,

procedures or specific standards described in manuals or other sources."[5]  (Doc. No. 46-37 at 3);  29

C.F.R. §541.202(e) (explaining that "clerical or secretarial work" does not constitute the exercise

of discretion and independent judgment); 29 C.F.R. §541.704 (stating that the Independent Judgment

Requirement is not met where employees "simply apply well-established techniques or procedures

described in manuals or other sources within closely prescribed limits to determine the correct

response to an inquiry or set of circumstances").

Notwithstanding the fact-specific issues involved in distinguishing between rote application

of techniques and procedures and the true exercise of independent judgment and authority, the DOL

Division concluded that the Adjusters met the Independent Judgment Requirement because the facts

presented demonstrated that:

> [The Adjusters] *have complete discretion and independent judgment with regard to all claims within their established authority.  They make all relevant decisions regarding coverage and liability, and they negotiate with full authority to attempt to achieve a settlement.*  Some of the adjusters have quite limited levels of authority, as low as $3,000.  However, even those adjusters make recommendations to their supervisors on the appropriate value of much larger claims, which are frequently accepted.  Moreover, after the supervisor approves a particular settlement value on a larger claim, the adjusters proceed with the same independence as they do on claims within their authority and determine the most appropriate method for resolving the claim within that approved amount.  Even on such large claims, *if negotiations fail, the adjusters continue to be responsible for handling the claim, and they work with counsel to represent the [employer] in litigation that ensues.* . . .
>
> [The Adjusters] are not merely pursuing a standardized format for resolving claims, but rather are using their own judgment about what the facts show, *who is liable, what a claim is worth, and how to handle the negotiations with either a policyholder or a third party claimant in order to achieve a successful resolution.*

(Doc. No. 46-37 at 3 (emphasis added).)

---

[5] The Opinion Letter cites to 29 C.F.R. §541.207, which now appears at 29 C.F.R. §541.202.

Here, Hartford attempts to emphasize the similarities between their LTD III Analysts and the claims adjusters described in the Opinion Letter and in Regulation §541.203, while Plaintiffs focus on the many differences. (*Compare* Doc. No. 46, *with* Doc. No. 50.) For instance, Hartford emphasizes that as in Regulation §541.203, Plaintiffs' job duties include: (1) interviewing insureds, employers and physicians; (2) reviewing factual information, including medical records; (3) evaluating and making recommendations regarding coverage of claims; and (4) determining liability within their respective authority ($2,000 per month for Hollinger, $2,500 for Paylor, and $5,000 for Rosario). (Doc. No. 46).

Plaintiffs counter that these similar job duties are overwhelmed by the differences, including that: (1) their telephonic claimant interviews and the bulk of correspondence was rote, and they rarely "interviewed" physicians or employers; (2) they did not visit locations related to insurability issues; (3) they did not inspect property damage or prepare damage estimates; (4) they never negotiated settlements with the claimants because such matters were referred to settlement specialists, or required immediate supervision and mere conveyance of a non-negotiable offer authorized by a supervisor; (5) they did not set reserve amounts related to their claims; and (6) they had no involvement in litigation that might arise from the claims they handled. Finally, the parties dispute what percentage of the Plaintiffs' work days were spent on mere "clerical" duties, what percentage of recommendations concerning claims were accepted by Plaintiffs' supervisors, and to what extent Plaintiffs' claims handling and decisions were controlled by Hartford's detailed policies and procedures.

Given the record evidence presented to date, the Court concludes that a reasonable factfinder could reject Hartford's argument that Plaintiffs' exercised sufficient independent judgment and

discretion concerning matters of significance to satisfy the Independent Judgment Requirement. Rather, a reasonable factfinder could conclude that, under significant supervision, Plaintiffs simply applied well-established techniques or procedures developed by Hartford within "closely prescribed limits" set by Hartford to determine "the correct response to an inquiry or set of circumstances" presented by Hartford's long term disability claimants. 29 C.F.R. §541.704.

### B.    Conclusion

Hartford has not met its weighty burden to show that no reasonable jury could rule against it with respect to the Exemption Defense. *Am. Family Mut. Ins. Co. Overtime Pay Litig.*, Master Docket No. 06-cv-17430-WYD-CBS, 2007 WL 2936319 *9-11 (D. Colo. 2007)(denying summary judgment because defendant insurance company did not fulfill its heavy burden to demonstrate its "physical damage claim analysts" exercised sufficient "discretion and independent judgment as to matter of significance"); *e.g.*, *Colyer v. SSC Disability Servs., LLC*, No. 11-cv-20984, 2012 WL 882500 (S.D. Fla. Mar. 14, 2012)(denying motion for summary judgment on Exemption Defense); *Caveness v. Vogely & Todd, Inc.*, No. 3:10–65-, 2011 WL 3841649 * (M.D. Tenn. Aug. 30, 2011)(denying summary judgment on employer's Exemption Defense even though employer established that some duties of its "estimator" were comparable to work done by insurance adjuster); *Foster v. Nationwide Mut. Ins. Co.*, 695 F.Supp.2d 748 (S.D. Oh. 2010)(holding that fact issues concerning extent of insurance investigators' discretion and independent judgment precluded employer's motion for summary judgment on Exemption Defense); *Fenton v. Farmers Ins. Exch.*, 663 F.Supp.2d 718, 725-27 (D. Minn. 2009)(denying motion for summary judgment on employer's Exemption Defense because employees who investigated potentially fraudulent insurance claims lacked sufficient discretion and judgment concerning matters of significance, but were bound to

strictly apply the employer's investigative guidelines and procedures); *Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F.Supp.2d 606, 616-617 (D. Conn. 2007)(holding questions of fact existed precluding insurer's motion for summary judgment as to the exempt status of "automobile damage appraiser" or adjuster). Accordingly, the Court will deny Hartford's request for summary judgment concerning Count I of the Amended Complaint.

## II. The FMLA Claims

In Count II and Count III, Plaintiffs assert claims for interference and retaliation in violation of the FMLA. (Doc. No. 31 ¶¶30-41.) Hartford contends that it is entitled to summary judgment on Counts II and III because there is no dispute in the record that: (1) Paylor's FMLA claims are barred "pursuant to a lawfully binding separation agreement and release executed by" Paylor (*id.* at 18-23); (2) Hartford granted every request for FMLA leave made by Plaintiffs (Doc. No. 46 at 33-49); and (3) Plaintiffs cannot raise an issue of fact that Hartford's adverse employment decisions were pretext for retaliation under the FMLA. Plaintiffs counter that: (1) the Settlement is invalid as a matter of law; (2) while Hartford granted most requests for FMLA, Hartford's termination of Rosario and Hollinger interfered with their pending requests for leave; and (3) direct and circumstantial evidence casts sufficient doubt on Hartford's employment decisions to raise a question of pretext in the mind of a reasonable factfinder.

### A. The Settlement Defense

To obtain summary judgment with respect to its Settlement Defense, Hartford must establish as a matter of law that Paylor knowingly and voluntarily released her claims under the FMLA. *Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d 1036, 1040-41 (11th Cir. 2007); (Doc. No. 46 at 18-23 (arguing Paylor's FMLA claims are barred under the Settlement); Doc. No. 51-3 (providing

a copy of the Settlement).  Factors pertinent to this issue include Paylor's education and business experience, the time afforded Paylor to consider the Settlement before signing, whether Paylor was given an opportunity to consult with an attorney, and "the consideration given in exchange for the waiver when compared with the benefits to which" Paylor was otherwise entitled.  *Id.* (quoting *Puentes v. United Parcel Serv., Inc.*, 86 F.3d 196, 198 (11th Cir. 1996)).

Here, Paylor does not argue that the Settlement was unknowing and involuntary under the factors set forth in *Myricks*, nor does the record support such an argument.  At the time Paylor executed the Settlement, she was 56 years old and had worked in the insurance industry for 26 years. Although Paylor did not have a high school or college degree, she had attended college and had taken numerous courses related to the insurance industry.  Under the Settlement, Paylor received thirteen weeks of severance pay she to which she would not have been entitled to absent the Settlement. (Doc. No. 46-36 ¶7.)  Further, under the terms of the Settlement, Paylor acknowledged that she had been advised to consult with an attorney.  (Doc. No. 51-3 ¶5.10.)  In addition, Paylor acknowledged in the Settlement that she had been afforded 21 calendar days to consider whether to accept Hartford's offer; and, she also had seven calendar days following execution of the Settlement to revoke the Settlement.  (*Id.* ¶6.8 and ¶6.9.)  Under these circumstances, no reasonable jurors could conclude that Paylor unknowingly or involuntarily entered into the Settlement.  (Doc. No. 46-9–46-16.)

Rather than argue that the Settlement was unknowing and involuntary, Paylor contends that the Settlement is unenforceable as a matter of law based on an analogy to law concerning settlement

of FLSA claims.[6] Specifically, Paylor contends that a waiver of FMLA rights, like a waiver of FLSA

rights, is not enforceable absent approval by a Court or the DOL. (Doc. No. 50 at 26-31.) Paylor's

argument fails because she relies on law decided *before* the Regulations concerning settlement of

FMLA claims were amended to clarify that employers and employees may independently resolve

FMLA claims concerning an employer's past wrongdoing. (*Id.* (citing *Taylor v. Progress Energy,*

*Inc.,* 415 F.3d 364 (4th Cir. 2005).)

In 2009, the DOL amended Regulation §825.220(d) to add the following highlighted

language:

> Employees cannot waive, nor may employers induce employees to waive, their
> prospective rights under FMLA. For example, employees (or their collective
> bargaining representative) cannot "trade off" the right to take FMLA leave against
> some other benefit offered by the employer. *This does not prevent the settlement or
> release of FMLA claims by employees based on past employer conduct without the
> approval of the [DOL] or a court. . . .*

29 C.F.R. §825.220(d) (emphasis added). In so amending the Regulations, the DOL explicitly

disagreed "with the Fourth Circuit Court of Appeal's interpretation" in *Taylor*. Further, since

amendment of Regulation §825.220(d), courts in the Fourth Circuit have recognized that *Taylor* is

superseded and is no longer good law. *Whiting v. Johns Hopkins Hosp.*, 416 Fed. App'x 312, 316-17

(4th Cir. 2011) (enforcing Regulation §825.220(d) as amended and rejecting the employees'

argument that the Fourth Circuit should continue to follow *Taylor*).

Although the Eleventh Circuit Court of Appeals has not directly addressed the legality of a

release of FMLA claims based on past employer conduct, the Court is confident that such a release

---

[6] It is well established that FLSA claims cannot be waived or released by private agreement. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982). Thus, the Agreement did not release Paylor's FLSA claims.

would be held enforceable pursuant to Regulation §825.220(d). *Whiting*, 416 Fed. App'x at 316-17; *Faris v. Williams WPC-1, Inc.*, 332 F.3d 316, 318 (5th Cir. 2003) (holding that post-dispute settlement of FMLA claims is permitted); *e.g. Lemke v. Waterloo Indus.*, No. 11-C-258, 2011 WL 443157 (E.D. Wis. 2011) (holding that post-dispute settlement of FMLA claims is permitted under revised Regulation §825.220(d)); *Sauter v. Fed. Home Loan Bank of N.Y.*, No. 08-cv-899, 2009 WL 2424689 (D. N.J. Aug. 5, 2009) (enforcing FMLA waiver based on "proper deference" to the DOL's interpretation of Regulation §825.220(d)); *Dougherty v. Teva Pharms. USA, Inc.*, No. 05-2336, 2007 WL 1165068 (E.D. Pa. Apr. 9, 2007) (same). Accordingly, the Court rejects Paylor's argument that the Settlement was invalid and finds that the Settlement bars Paylor's FMLA claims. Hartford's Motion will be granted as to its Settlement Defense, and the Court will dismiss Paylor's FMLA claims under Counts II and III of the Amended Complaint.

### B.    Rosario and Hollinger's FMLA Claims

#### 1.    The *Prima Facie* Case

To satisfy their respective burdens to establish a *prima facie* case of retaliation, Rosario and Hollinger must point to record evidence that (1) they each engaged in statutorily protected conduct, (2) they each suffered an adverse employment action, and (3) there is a causal connection between the protected conduct and the adverse actions by Hartford. (*Supra* THE LEGAL STANDARDS, PART III.B.) The Eleventh Circuit has held that proximity in time between an employee's exercise or attempt to exercise FMLA rights and an employer's adverse employment action is sufficient to raise an inference of causation. *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of

material fact of a causal connection.").  Here, Hartford's discipline and terminations of Rosario and

Hollinger followed their respective exercise of the right to take almost four hundred hours of FMLA

leave each, as well as their efforts to obtain additional leave.[7]  (*Supra* THE FACTUAL RECORD, PART

II.)  Accordingly, the Court finds that Rosario and Hollinger plainly satisfy the requirements of

establishing a *prima facie* case.  *Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 934 (11th Cir.

1995).

### 2.      Hartford's Rebuttal

Because Rosario and Hollinger have made out their respective *prima facie* cases, Hartford

has the burden of production to articulate legitimate reasons for its adverse employment actions.

*Smith*, 273 F.3d at 1314.  Hartford has met its burden of production with respect to both Hollinger

and Rosario.  Specifically, pointing to the testimony of Crump and Glass and the Dorris Affidavit,

Hartford claims that Hollinger was disciplined and terminated based on her deletion of diary entries

which are company records meant to track a LTD III Analysts' work on their respective claims.

(Doc. No. 42-67 at 8 ("The actual reason that [Hollinger] was terminated was due to an integrity

issue where she was . . . deleting diaries without completing the work."); *id.* at 52-54; Doc. No. 46-

32 - 46-33; Doc. No. 46-36.)  Further, Hollinger admitted that she did delete diary entries.  (Doc.

Nos. 46-17–46-26.)  Accordingly, Hartford has satisfied its burden of production concerning

Hollinger.  As to Rosario, Hartford points to testimony of Ford and Crump that Rosario was

disciplined and terminated for solely due to her failure to return her claimants' calls as required

---

[7] Hollinger's *prima facie* case is less compelling than Rosario's in that the record indicates the decision to terminate Hollinger was initiated prior to her final request for leave.  Given that Hollinger had previously requested approximately 400 hours of leave under the FMLA, and construing every inference in favor of Hollinger, the Court finds that the timing of her final leave request is not fatal to her *prima facie* case.

under Hartford's Sundown Rule. (Doc. No. 46-34 at 34; Doc. 46-32–46-33.) Accordingly, Hartford has met its burden of production and proffered a legitimate reason for its discipline and discharge of Rosario as well.

### 3. Pretext

Because Hartford has articulated facially legitimate reasons for its discipline and discharge of Rosario and Hollinger, the presumptions of retaliation raised by their *prima facie* cases drop out, and Rosario and Hollinger are left with the burden of persuasion on the issue of pretext. *McDonnell Douglas Corp.*, 411 U.S. at 802; *e.g.*, *Anyanwu v. Brumos Motor Cars, Inc.*, No. 11-12488, 2012 WL 5476924 *3 (11th Cir. Nov. 13, 2012); *Burgos v. Chertoff*, 274 Fed. App'x 839, 841 (11th Cir. 2008). To prevail at the summary judgment stage, Rosario and Hollinger must show that the record is not so one-sided that reasonable jurors must accept Hartford's stated non-retaliatory reason for its employment actions. *Hairston*, 9 F.3d at 920-21 (reversing grant of defendant's summary judgment motion and noting that a plaintiff's initial evidence combined with effective cross-examination may be sufficient to establish pretext at trial); *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986) (affirming judgment for employee who discredited employer's stated reason for termination of her employment and rejecting employer's argument that employee was required to submit additional evidence of pretext). Admissions of a decision-maker concerning retaliatory intent undermine a claim of legitimate grounds for adverse employment action, as do inconsistent statements concerning the reason for an adverse employment action. *Donnellon*, 794 F.2d at 601-602. Further, evidence of good work performance followed by inexplicable scrutiny of an employee's activities may be sufficient to raise a question of fact as to pretext. *Hairston*, 9 F.3d at 921 (cautioning that issues of fact and "sufficiency of evidence are properly reserved for the jury).

### a.     Rosario Has Raised a Question of Fact as to Pretext

Rosario contends that questions of fact exist that Hartford's reason for disciplining and terminating her was due to her exercise of FMLA rights and not due to her violations of the "Sundown Rule." (Doc. No. 50 at 16, 33-34.)  Specifically, Rosario points to statements made by Ford, her direct supervisor, which were antagonistic to Rosario and her use of intermittent leave under the FMLA.  (*Id.*; Doc. No. 46-2 at 17-20.)  Further, Ford allegedly assisted his team members who took planned leave (such as a planned vacation), but denied such assistance to Rosario and others who took intermittent FMLA leave.[8]  (Doc. No. 46-2 at 20-24.)  In his deposition, Ford confirmed Rosario's perception that Ford had a negative view of FMLA leave and the adverse impact such leave had on the operation of his team and Hartford's business.  (Doc. No. 46-34 at 22-22-23, 27 (admitting that having three persons on FMLA leave was "naturally" frustrating to him); *id.* at 31-32 (explaining that he "mainly internalized" his frustration concerning FMLA-related absences); *id.* at 47; *id.* at 58-60 (explaining his "frustration was due to multiple people being out at one time due to FML [sic] related items which, of course, I have no control over").)  Ford's admitted antagonism to Rosario's exercise of FMLA rights raises an inference supporting Rosario's claim of pretext.[9]

---

[8] Crump testified that under Hartford's "desk coverage plan," an LTD III Analyst's duties should be handled by another team member during an absence of three days or more, and new claims should not be given to such absent LTD III Analyst.  (Doc. No. 46-32 at 65-68.)  According to Rosario, she did not receive the benefit of the desk coverage plan during her FMLA absences.  (Doc. No. 46-2– 46-8.)

[9] Rosario testified that she complained to Crump concerning Ford's conduct.  After her complaints, Ford stopped specifically referencing FMLA, although he did not stop his antagonistic comments concerning Rosario's absences.  (Doc. No. 46-2; Doc. No. 46-32 (stating that Ford would have received a verbal warning based on allegations that Ford commented on Rosario's exercise of rights under the FMLA).)

Rosario's claim of pretext is further supported by Ford's inconsistent recollection of Rosario's job performance, operation of the Sundown Rule,[10] and his discipline and termination of Rosario. For instance, Ford stated that he had given Rosario a verbal warning concerning her failure to meet performance metrics in the early part of 2009; however, the documentation indicates Rosario had no issues in meeting the requisite metrics, and Rosario denied receiving such a verbal warning. (Doc. No. 46-34 at 16-17, 46.) Further, Ford could not identify any costumer complaint that resulted from Rosario's violation of the Sundown Rule. (Doc. No. 46-34 at 35-36.) Rather, Ford simply decided to "monitor" Rosario's phone activity as part of his "claim review" to determine whether Rosario was in compliance with "the Sundown Rule."[11] (*Id.*) Ford thought "several" violations were discovered, though he could not "remember the exact number," and he admitted that at least some of her purported Sundown Rule Violations followed Rosario's FMLA-related absences. (Doc. No. 46-34 at 26-27, 35-36.)

---

[10] Like Ford, Crump could not articulate how the Sundown Rule should work where compliance was impossible because an employee, like Rosario, missed several days of work based on FMLA. (Doc. No. 46-34; Doc. No. 46-32.) Crump suggested that in "mitigating circumstances" there may be exceptions to the Sundown Rule. (Doc. No. 46-32 at 19-25; *id.* at 92-93 ("I really don't have a direct answer about Sundown Rule violations because the violation has taken place when we don't adhere to the rule that was established.").) Crump also testified that if a person is not in the office to return calls "that wouldn't be a violation of the Sundown Rule." (*Id.* at 24, 90 (stating that "if someone's out of the office, then they can't be held accountable for the time they're not there" for purposes of the Sundown Rule.) Despite Rosario's frequent FMLA absences, and Ford's concession that at least some of the Sundown Rule Violations correlated with Rosario's absences, there is no evidence that any effort was made to determine if such "mitigating circumstances" warranted consideration of discipline other than termination for Rosario. (Doc. No. 46-32 at 82-85 (providing testimony of Crump that he did not investigate Ford's allegations of Rosario's Sundown Rule violations, and he accepted Ford's representations).)

[11] Ford's supervisor, Crump, testified that routine auditing of calls wasn't a "standard in place," and such audits were generally triggered by a customer complaint. (Doc. No. 46-32 at 68-69, 81.)

Ford admitted that Hartford did not have a "zero tolerance" policy in relation to Sundown Rule Violations. (Doc. No. 46-34 at 39-40.) Nonetheless, upon discovery of Rosario's purported violations, Ford contacted Crump and human resources, and human resources asked Ford what discipline was appropriate for Rosario.[12] (Doc. No. 46-34 at 37.) Ford advised that termination was the action taken in the only other instance when he dealt with an employee who violated the Sundown Rule.[13] (*Id.* at 38-42 (testifying that he and Crump recommended that Rosario be terminated).) Ford conceded that the other person's conduct was more egregious than Rosario's in that he deleted 23 voice mail messages without listening to the messages or responding to the callers. (*Id.* at 43-44.)

Upon consideration of the entire record, the Court finds that Rosario has identified sufficient evidence from which a reasonable jury could conclude that Hartford's reason for terminating Rosario was a pretext for FMLA retaliation. Accordingly, Rosario's interference and retaliation claims are not properly resolved at the summary judgment stage. *Hairston*, 9 F.3d at 921; *Donnellon*, 794 F.2d at 601-602 (affirming judgment for plaintiff where defense witnesses "never articulated clearly and consistently the reason that the plaintiff was discharged"); *e.g.*, *Freytes-Torres v. City of Sanford*, 270 Fed. App'x 885, 894 (11th Cir. 2008); *Akins v. Fulton County, Ga.*, 420 F.3d 1293, 1304 n.4 (11th Cir. 2005)(finding an issue of fact where there was conflicting evidence presented as to the subject matter discussed at a meeting); *Dunning v. Nat'l Indus., Inc.*, 720 F.Supp. 924, 932-34 (M.D.

---

[12] The deference given to Ford by Human Resources undermines Ford's contention that Human Resources made the final decision to terminate Rosario.

[13] Ford claimed that Crump advised him that other employees had been terminated for violations of the Sundown Rule; however, neither Ford nor Crump could identify any such situation.

Ala. 1989)(finding pretext based on evidence of employer's inconsistent treatment of employees). Thus, the Court will deny Hartford's Motion as it pertains to Rosario's FMLA claims asserted in Count II and III of the Amended Complaint.

### b.       Hollinger Has Not Raised a Question of Fact as to Pretext

Unlike Rosario, Hollinger can point to no evidence that her direct supervisors were antagonistic to her exercise of rights under the FMLA. To the contrary, Hollinger described her supervisors as "fair." (Doc. No. 46-20 at 64-65.) Further, unlike the Sundown Rule, the rule against diary deletions was not ambiguous, nor would absences from work mitigate against a violation. Hollinger did not deny that she deleted multiple diary entries, and she knew that doing so was contrary to Hartford's policies. (Doc. No. 46-20 at 67-68, 73; doc. No. 46-21 at 74-78, 87-88.) Hollinger admitted to additional performance issues and problems maintaining necessary turnaround time for claims and untimely claims handling. (Doc. No. 46-20 at 35-37 (reviewing performance reviews and meeting notes).) Finally, Hollinger testified that she knew of Hartford terminating other employees for diary deletions. (Doc. No. 46-21 at 88-89 (identifying two other persons terminated for deleting diary entries).)

Given Hollinger's admissions, and the facts surrounding her termination, her unsupported speculation that her termination was retaliatory fails to create a genuine issue of fact for trial. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (stating that a plaintiff's "speculation . . . creates a false issue, the demolition of which is a primary goal of summary judgment"). In short, the record concerning Hollinger's termination is so one-sided that reasonable jurors must accept Hartford's stated non-retaliatory reason for its termination of Hollinger. *Blackmon v. Wal-Mart Stores East, L.P.*, 358 Fed. App'x 101, 104-05 (affirming summary judgment

for defendant where evidence supported employer's conduct, and plaintiff offered no evidence of inconsistent application of the discipline at issue); *Hoard v. CHU2A, Inc.*, 228 Fed. App'x 955, 959-60 (11th Cir. 2007)(rejecting pretext claim where employee admitted to misconduct and offered no evidence of improprieties in the termination process). Accordingly, the Court will grant the Motion as to Hollinger's FMLA claims asserted in Count II and II of the Amended Complaint.[14]

## CONCLUSION

Based on the foregoing, it is **ORDERED and ADJUDGED** as follows:

(1)    The Motion for Final Summary Judgment and Incorporated Memorandum of Law filed by Defendant Hartford Fire Insurance Group (Doc. No. 46, filed Aug. 13, 2012) is **GRANTED IN PART AND DENIED IN PART**;

(2)    The Motion (Doc. No. 46) is **GRANTED** with respect to Plaintiff Blanche Paylor's claims for relief Under the Family Medical Leave Act as set forth in Counts II and III of the Amended Complaint (Doc. No. 32);

(3)    The Motion (Doc. No. 46) is **GRANTED** with respect to Plaintiff Dashawna Hollinger's claims for relief Under the Family Medical Leave Act as set forth in Counts II and III of the Amended Complaint (Doc. No. 32);

(4)    Counts II and III of the Amended Complaint (Doc. No. 32) **ARE DISMISSED** as to Plaintiffs Blanche Paylor and Dashawna Hollinger; and

---

[14] As noted *supra*, an interference claim does not require proof of an employer's wrongful intent. (*Supra* THE LEGAL STANDARDS, Part III.A.) Mere denial of a right is sufficient. (*Id.*) Here, Hollinger admits that she was granted all FMLA leave that she requested while at Hartford. (Doc. No. 46-23 at 124.) Thus, the only interference at issue for Hollinger relates to FMLA lost as a result of her termination. Accordingly, Hollinger's interference claim fails for the same reason her retaliation claim fails.

(5)     The Motion (Doc. No. 46) is **DENIED** in all other respects.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on December 10__, 2012.


PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT


Copies furnished to:

Counsel of Record